I concur fully in all aspects of the main opinion; I write specially only to discuss further the conclusion expressed in the penultimate paragraph before the "conclusion" of the opinion, that "because Dr. Dockray had not performed mammograms" for several years preceding the alleged misreadings of Carolyn Holcomb's mammograms by the defendant radiologists, *Page 1025 
it was within the discretion accorded the trial judge by Rule 702, Ala. R. Evid., to exclude his testimony, even though Dr. Dockray qualified as a similarly situated health-care provider under § 6-5-548(c), Ala. Code 1975. Technically, what is at issue here is not the "performance" of a mammogram, but rather the interpretation or "reading" of the resulting image.
Holcomb argues in brief that the Mammogram Quality Standards Act ("the MQSA") "is merely a quality assurance statute for hospitals and medical facilities" and that its enactment did not cause "board certified diagnostic radiologists in those facilities, who read and interpreted thousands of mammograms over the course of years, [to] become any less qualified." I do not agree that the MQSA is a quality-assurance statute only for hospitals and medical facilities, and, although I agree that board-certified diagnostic radiologists did not become any less qualified immediately upon the enactment of the MQSA, I believe their qualifications with regard to the specialized area of interpreting mammograms would have subsequently begun to suffer when they were disqualified from performing clinical mammogram interpretations.
Under the MQSA, "[t]he term `facility' means a hospital, outpatient department, clinic, radiology practice, or mobile unit, an office of a physician, or other facility as determined by the Secretary, that conducts breast cancer screen or diagnosis through mammography activities." 42 U.S.C. § 263b(a)(3)(A). The activities of a facility governed by the MQSA include "the initial interpretation of the mammogram" and, when "the interpretation of the mammogram [is] performed in a location different from where the mammogram is performed, the facility performing the mammogram shall be responsible for meeting the quality standards described in subsection (f) of this section."42 U.S.C. § 263b(a)(3)(B). In order to be certified, a facility must "provide for the interpretation of a mammogram produced by . . . equipment at the facility or under arrangements with a qualified individual at a facility different from where the mammography examination is performed."42 U.S.C. § 263b(b)(2)(B).
Under the aforesaid "subsection (f)," standards established by the Secretary include those that require establishment and maintenance of a quality-assurance and quality-control program at each facility that is adequate and appropriate to ensure "accuracy of interpretation of mammograms" and include "a requirement that mammograms be interpreted by a physician who is certified as qualified to interpret radiological procedures, including mammography . . . and who meets training andcontinuing medical education requirements as established by the secretary." 42 U.S.C. § 263(f)(1)(D).
The regulations implementing the MQSA are found at21 C.F.R. § 900.1 et seq. Subsection (u) of 21 C.F.R. § 900.2
states that "[i]nterpreting physician means a licensed physician who interprets mammograms and who meets the requirements set forth in § 900.12(a)(1)." That regulation, in turn, establishes numerous demanding qualifications a physician must meet in order to be eligible under the MQSA to interpret mammograms, including extensive requirements for continuing clinical experience and education. As Holcomb forthrightly acknowledges in his brief to this Court, under the MQSA, "facilities are required to have their interpreting physicians earn and maintain continuing education credits related to mammography, and review a minimum amount of mammograms over a 24-month period." (Holcomb's brief, pp. 29-30.) *Page 1026 
By the time of the earliest occurrence of the alleged breach of the standard of care by any of the defendant radiologists, June 30, 1997, Dr. Dockray had long since become disqualified from interpreting mammograms as an "interpreting physician" under the MQSA. He did not violate the MQSA after it became effective October 1, 1994, because he has not undertaken to interpret a mammogram for clinical purposes subsequent to that time. Thus, it was within the discretion accorded the trial court to conclude that Dr. Dockray's familiarity with the interpretation of mammograms had become sufficiently "stale" by June 1997, through inactivity, and certainly more so by the time Dr. Manzi conducted his single mammogram interpretation on June 3, 1999, that Dr. Dockray's testimony was properly excludable under Rule 702, Ala. R. Evid.
NABERS, C.J., and SEE, SMITH, and BOLIN, JJ., concur.